Memorandum of Decision
This is an action for the termination of parental rights of Tina N. and Kenneth N., the biological parents of the minor children: Kenneth, born December 23, 1986, Joshua, born March 7, 1991 and Alicia, born November 28, 1992. These children have previously been found to be neglected and abused children on September 28, 1995 (McWeeny, J.).
These children have been in foster care since April 26, 1995. It is no tribute to the Department of Children and Families ("DCF") that petitions to terminate parental rights were not filed until November 20, 1997. The facts of this case are so egregious that termination of parental rights petitions should have been considered as soon as the parents failed to respond to DCF's initial referrals for services.
The record in this case is clear. The Summary of Facts to Substantiate Allegations of Abuse and Neglect dated April 27, 1995 presented a situation of multi-generational sexual abuse, cocaine and alcohol abuse, and physical, educational, medical and moral neglect of such magnitude, that no reasonable amount of counseling and services could possibly bring these biological parents into a reasonably rehabilitative state whereby they could provide for the care, guidance, and control necessary for the children's well-being.[2] Why the various social workers, supervisors, and program supervisors trained in the behavioral CT Page 15464 sciences did not recognize at an early date that these parents were unfit and beyond remediation is not readily understandable.[3]
Without disclosing the sordid details of neglect and abuse, it is sufficient to say that DCF became involved with this family in April of 1995, when Kenneth, Jr., then eight and a half, revealed that he had been sexually molested, abused, and threatened by his father's brother, Darryl, ever since Kenneth, Jr. was four years old. The child had told his parents about this abuse two years previously. When Kenneth, Jr. told his father that he had been sexually abused, Kenneth, Sr. responded to the situation by telling his brother Darryl that ". . . he would beat the s___ out of him if he ever did it again." The parents continued to allow Kenneth, Jr. and the other children to have contact with the brother, Uncle Darryl.
When confronted by the police about these allegations, the father, Kenneth, Sr., told the police that his children had daily contact with Darryl and that Darryl drank and smoked marijuana and when he drank, "you [couldn't talk to him or listen to him." The father further told the police that Darryl had had trouble with the police due to a break-in to the girl's locker room in the high school and an incident in which Darryl stole female underwear from people's clothes lines.
When the police confronted Darryl, he immediately admitted to sexually abusing the child, and further disclosed that when he, himself, was a child between the ages of three and twelve, his older brother, Kenneth, Sr., had forced him to have anal and oral sex. Darryl further told the police that Kenneth, Sr. and his wife used cocaine in the presence of the children and disclosed a beeper number from which to purchase rock cocaine.
Further investigation by the police and DCF revealed that Kenneth, Jr. had missed thirty-one days of school and been tardy thirty-five days. The parents' home was in complete disarray with little food and inappropriate sleeping arrangements. The father, Kenneth, Sr., was unemployed and the family was in the process of being evicted. Later medical and dental neglect were confirmed. The children were removed from the home and have been in foster care for the past three and a half years. On September 28, 1995 the children were adjudicated to have been abused and neglected. When the children were committed to the are of the Commissioner on September 28, 1995, and again on October 1, 1996, expectations CT Page 15465 were prepared and signed by the parents. These expectations included the usual requirements to avoid substance abuse, to participate in counseling, and to follow the recommendations for treatment.
Subsequent therapy has indicated that Joshua, then four years of age, may have been sexually victimized by his father, Kenneth, Sr. The mother, Tina, has admitted in therapy to beginning her cocaine dependence at age nineteen. Each year following the children's removal, Tina has tested positive for substance abuse. She is presently twenty-eight years of age and within the past six months, during calendar year 1998, she refused to have her hair tested for the presence of cocaine. She has been in various therapy programs offered by DCF over the course of the last four years. In one program she missed sixteen out of thirty-one sessions. She has tested positive for the presence of cocaine and in one program failed to appear for four drug screens.
Her family history, taken early in the case, shows a very dysfunctional family of origin. Tina was born during her mother's second marriage. Her father is currently incarcerated for the double homicide of his brother and his brother's girlfriend. Tina is a high school drop-out, shows a history of short term, sporadic, employment. She was arrested nearly two years after her children were removed for possession of narcotics and drug paraphernalia. In April, 1997 she was fined for possession of drug paraphernalia. She has failed to benefit from the various substance abuse programs offered by DCF and is basically not highly motivated to change her life-style.
Kenneth, Sr. has also tested positive for the presence of cocaine each year following the removal of his children. In therapy he has admitted to smoking marijuana since he was thirteen years of age and drinking alcohol since the seventh grade. He admits to having used cocaine, heroin, and crack. Following completion of a DCF-mandated treatment program at the Rushford Center, he continues to use controlled substances.
Kenneth, Sr.'s record of anti-social behavior includes a conviction for burglary, driving through a police road block and smashing into a police cruiser for which he was incarcerated, and another incarceration for driving under suspension. His actual record of convictions in Connecticut and North Carolina includes: assaulting a police officer, interfering with police, reckless endangerment, burglary second, criminal mischief, giving a false CT Page 15466 statement, larceny, and burglary third. Kenneth, Sr. was also arrested in February, 1997 for possession of narcotics and drug paraphernalia. He has declined in 1998 to give hair samples for a determination of the presence of drugs. He has not benefitted [benefited] from any DCF sponsored drug programs; he has failed to address his anger management problems. Neither parent has shown any inclination or initiative to improve their parenting skills.
The family members were evaluated by Barbara Berkowitz, a licensed clinical psychologist. Her evaluation report of April 7, 1998 was entered as Exhibit #1. Dr. Berkowitz found the children to have significant emotional and behavioral problems which require specialized treatment. In her testimony, Dr. Berkowitz observed that Kenneth, Sr. characterized all of the family problems as having occurred while the children were in foster care, rather than as having resulted from the sexual assaults and substance abuse which occurred in the home; she noted that the father's perception was "pretty profoundly amazing." Dr. Berkowitz observed that the father externalizes everything. She saw neither parent as able to set appropriate boundaries for their children. She concluded that termination of their parental rights was appropriate. "The children have been in static limbo for several years and they need permanency. It's too late for these parents and these children."
The question of what constitutes a good permanency plan has been recently addressed in a notice of proposed rule-making by the U.S. Department of Health and Human Services. In preparing the regulations to implement the Adoption and Safe Families Act of 1997 (Federal Register September 18, 1998), the Department indicated that the ingredients of a good permanency plan for children are five in number:
 1. It is legally intended to be permanent, both to last throughout the child's minority and to establish family relationships that will last for the child's lifetime.
2. It is legally secure from modification.
 3. It is binding on the adult or adults who are awarded permanent care and control of the child.
 4. The permanent care giver has the equivalent legal responsibility for the child as a birth parent. CT Page 15467
 5. The government no longer acts as parent of the child. (NPRM Federal Register 9/18/98)
The federal guidelines further specifically state that foster care is a temporary setting and not a place for children to grow up. Neither foster care nor transfer of guardianship fulfills all of the requirements of a good permanent plan for children in most cases. In situations where the children cannot be safely returned to their parents, adoption is the best alternative when it is available.
In the present case, the children are fearful of reuniting with their parents. The parents have not been able to demonstrate a pattern of conduct that is free of illegal substances, have not demonstrated motivation to improve their parenting skills, and have not generated any confidence that they are competent to parent and to keep these children safe. The children have been in foster care for far too long. The children have demonstrated a bond with the foster parents and the foster parents have expressed a willingness to adopt the children. This plan for the permanency of these children is consistent with the federal guidelines and with the best interest of the children according to the Commissioner of DCF, the children's attorney, and the evaluating psychologist.
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds by clear and convincing evidence existing as of the date of petition, that the children have previously been adjudicated neglected and abused on September 28, 1995, and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children, such parents could assume a responsible position in the lives of the children. General Statutes § 17a-112(c)(3)(B).
The court finds that this ground has existed for more than one year.
Mandatory Findings:
The court makes the following factual findings required by 17a-112(e): CT Page 15468
1) Appropriate and timely services were provided by the Department of Children and Families since 1995, including substance abuse counseling, anger management counseling, parent aides, individual counseling for sexual abuse offenders, transportation assistance, and visitation coordination. (See paragraph 16 of Exhibit #7 for a complete list of services.)
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The court finds in this proceeding that the father was unable or unwilling to benefit from the counseling made available to him for substance abuse, anger management, and sexual abuse offender treatment. Mother's inability or unwillingness to resolve her multitude of personal drug related problems and to adjust her conduct to acceptable parental standards has prevented successful reunification efforts.
3) The Department, with the approval of the Court, set reasonable and realistic expectations in order to reunify the family. There was sporadic attendance by the mother but there was no measurable progress toward the goal of personal and parental rehabilitation.
4) The children have strong emotional ties with their foster families who have provided the physical, emotional and educational support these children need. The children have some positive emotional ties to the biological parents, but the predominate theme is of fear for their safety in the parents' care. The court places great weight upon the findings of Dr. Berkowitz and her recommendations contained in Exhibit #1.
5) Finding regarding the age of the children. Kenneth, Jr. is twelve years old. Joshua is seven. Alicia is six years of age. They have been in foster care for much of their lives. They deserve a permanent, structured, stable, caring, nurturing environment that the foster parents are willing to permanently provide.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct, or conditions, etc. The mother has been unable to internalize and benefit by the counseling and training offered by DCF. The father has made little effort to rehabilitate himself. He is unable to accept any responsibility for the neglect and abuse that occurred in the home. He externalizes all CT Page 15469 problems and blames the children's problems on the foster care providers. His anger toward the DCF worker was apparent during the trial. It is clear that he has failed to complete or benefit from anger management counseling, a necessary predicate to substance abuse therapy. Giving the parents additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the children to be reunited. In re Luis C., 210 Conn. 157 (1989); Inre Juvenile Appeal, 183 Conn. 11, 15 (1981).
7) Finding regarding the prevention of the parents from having a meaningful relationship, etc. The Department attempted to encourage contact and promoted visitation between the parents and the children. The parents were able to sustain the regular visitation schedule. No unreasonable conduct is noted.
 DISPOSITION
The court finds that the grounds and circumstances have existed over an extended period of time which is greater than one year. The court finds, based upon the testimony and evidence presented, that it would be in the children's best interest to terminate the parental rights of Tina N. and Kenneth N. at this time. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, and the totality of circumstances. The termination of parental rights is in the children's best interest. In re Juvenile Appeal(Anonymous), supra, 177 Conn. at 667-68. See generally, J. Goldstein, A. Freud A. Solnit, Beyond the Best Interests of theChild 99 (1979).
 ORDER
It is accordingly, ORDERED that the parental rights of Tina N. and Kenneth N. are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the three children. A permanency plan shall be submitted within ninety days. A Motion to Review Plan for Terminated Child shall be filed in accordance with Federal Law.
Francis J. Foley, Presiding Judge Child Protection Session
[2] The social workers who drafted the pleadings in the CT Page 15470 termination case did not even allege the denial of proper care by these parents.
[3] Hopefully, the new review procedures of the Adoption and Safe Families Act of 1997 will prevent the unreasonable delays in permanent placement observable in this case.